*State of Maryland v. Crystal Brookman* **and** *State of Maryland v. Marvin Randy Carnes*
No. 29, September Term 2017


**Criminal Procedure – Probation – Appellate Jurisdiction.** The Montgomery County Adult Drug Court program is a "problem-solving court" program in the Circuit Court for Montgomery County administered pursuant to Maryland Rule 16-207. Participants are selected from non-violent criminal defendants following conviction. If a defendant is accepted into the program, the Circuit Court orders the defendant to successfully complete the drug court program as a special condition of probation. Violations of the program's conditions subject the participant to a graduated menu of sanctions, ranging up to incarceration and termination from the program. When the Circuit Court imposes a sanction of incarceration against a participant for a program violation, the participant may seek appellate review of that decision by filing an application for leave to appeal.


**Criminal Procedure – Probation Conditions – Due Process – Sanctions Imposed under Drug Court Program.** When a Circuit Court administering a drug court program under Maryland Rule 16-207 considers the imposition of a sanction involving the loss of liberty or termination from the program, it must provide certain minimum due process protections as set forth in Rule 16-207(f), including notice, an opportunity to be heard, and the right to representation by counsel. The constitutional guarantee of procedural due process also requires that a defendant have the opportunity to confront and contest adverse evidence and the opportunity to have the court consider mitigating circumstances before the court imposes a sanction of incarceration.

IN THE COURT OF APPEALS
OF MARYLAND

No. 29
September Term, 2017

_____

STATE OF MARYLAND

V.

CRYSTAL BROOKMAN
_____

STATE OF MARYLAND

V.

MARVIN RANDY CARNES

_____

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by McDonald, J.
Hotten and Getty, JJ. concur.
Greene, Adkins, and Watts, JJ., dissent.

_____

Filed: July 31, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

The past three decades have seen the growth, in Maryland and elsewhere, of treatment programs operated under the auspices of the judiciary. In those programs, sometimes identified by the generic phrase "problem-solving courts," judges, counsel, probation officers, and treatment professionals work together to address an underlying issue that brings an individual into the criminal justice system. Problem-solving courts focus on therapy for the individual defendant, in the hope that both the individual and society will be better off in the long run. Preeminent among such programs are those known as "drug courts."

Drug court programs are conceived of as collaborative rather than adversarial. However, the coercive powers of the court under the criminal law are used as an important instrument to achieve the program's goals. This creates a tension: For a drug court's goals to be achieved, there must be swiftness and certainty of sanction for violation of its protocols. For the criminal justice system to work, there must be due process and respect for appellate rights.

These consolidated cases concern whether a circuit court's exercise of its coercive powers to incarcerate a drug court program participant in aid of the swiftness and certainty of program sanctions (1) is subject to appellate review and (2) can violate the participant's right to due process.

Respondents Crystal Brookman and Marvin Carnes were defendants in separate criminal prosecutions in the Circuit Court for Montgomery County. The Circuit Court determined that each was eligible to participate in the court's drug court program as a special condition of probation after each pled guilty in their respective cases. Each did so and fared well in the program for many months.

In early 2016, Ms. Brookman was alleged to have had a negative urinalysis – based not on a positive finding of illicit drugs, but on a test result that suggested she may have attempted to dilute her urine. At approximately the same time, Mr. Carnes appeared late for a randomly-scheduled drug test. At subsequent hearings concerning their respective alleged violations of the program conditions, each was represented by counsel. Ms. Brookman's counsel asked for a postponement to gather and present evidence contesting her test result; Mr. Carnes' counsel asked the court to consider mitigating evidence before imposing the program sanctions. However, in both cases, the Circuit Court declined to exercise discretion and imposed immediate sanctions from the program's sanctions menu. In both cases, those sanctions included overnight incarceration.

Ms. Brookman and Mr. Carnes filed applications for leave to appeal, which were accepted by the Court of Special Appeals and consolidated for appellate review. The intermediate appellate court held that Ms. Brookman and Mr. Carnes had the right to seek appellate review of the incarceration sanction. Upon that review, it held that the procedure followed in the Circuit Court did not comply with the requirements of due process.

We agree with the holdings of the Court of Special Appeals.

# I

## Background

### A.   *Drug Court Programs*

   1.   Problem-Solving Courts and Emerging Issues

Although one would hope that most courts contribute to the solution of society's problems, the phrase "problem-solving court" is generally used to denote a special docket in a trial court that targets defendants whose presence in the criminal justice system appears to be traceable, at least in part, to an underlying issue such as substance abuse.[1] To address that underlying issue, participants in the program are subject to a highly structured probation that includes treatment and monitoring. A typical drug court program is divided into several phases of diminishing intensity as the participant progresses in accordance with the program's goals.[2] To encourage a participant's compliance with treatment and monitoring, most programs require frequent status review hearings involving a judge assigned to the program and other court personnel. As a further incentive for participants to comply with the program's conditions, violations of program requirements are generally

---

[1] The first such court-sponsored program was a drug court program created approximately 30 years ago in Florida. C. McCoy, *The Politics of Problem-Solving: An Overview of the Origins and Development of Therapeutic Courts*, 40 Am. Crim. L. Rev. 1513, 1517 (2003). Encouraged in part by federal grants through the United States Department of Justice, such programs have spread throughout the country. *Id.*

[2] T. Oram & K. Gleckler, *An Analysis of the Constitutional Issues Implicated in Drug Courts*, 42 Idaho L .Rev. 471, 478 (2006).

punished with a series of graduated sanctions, some of which derive from the court's coercive powers.[3]

As some courts and commentators have noted, the use of coercive powers, coupled with the informal, collaborative nature of the program, can raise issues as to whether a participant has received the procedural due process guaranteed to criminal defendants and probationers.[4] Moreover, because of the intensive monitoring of the participant without counsel, or with counsel who is regarded as a member of a treatment team rather than an advocate, there can be ethical issues, such as the potential for *ex parte* communications between the judge and a defendant.[5]

---

[3] C. Fisher, *Treating the Disease or Punishing the Criminal?: Effectively Using Drug Court Sanctions to Treat Substance Abuse Disorder, and Decrease Criminal Conduct,* 99 Minn. L. Rev. 747, 758 (2014) (noting that "certainty, swiftness, and progressiveness" are key principles of graduated sanctions in a drug court program).

[4] R.C. Boldt, *Rehabilitative Punishment and the Drug Treatment Court Movement*, 76 Wash. U. L. Q. 1205, 1250-52 (1998) ("[W]hen treatment is built into a system that has retained at least some of the features of traditional criminal law…, such as the power to use coercive measures, procedural informality and a lack of detachment on the part of the decision maker can result in severe negative consequences for the defendant."); *see also* T. Oram & K. Gleckler, *supra*, at 485-532.

[5] R. Shymansky, *Blurred Lines: The Potential for Partial Judges and Impartial Lawyers in Drug Courts*, 55 Am. Crim. L. Rev. Online 7, 8 (2018); B. Shannon, *Specialty Courts, Ex Parte Communications, and the Need to Revise the Texas Code of Judicial Conduct*, 66 Baylor L. Rev. 127 (2014).

2. Problem-Solving Courts in Maryland

Problem-solving court programs were first established in Maryland in the early 1990s.[6]  According to the most recent annual report of the Office of Problem Solving Courts, there are 53 such programs associated with circuit courts and the District Court, focused on various underlying issues that bring individuals within the jurisdiction of the judicial system – substance abuse, mental health issues, truancy, and veterans' issues.  *See* https://www.courts.state.md.us/sites/default/files/import/opsc/pdfs/annualreports/fy2017o pscannualreport.pdf (last visited June 4, 2018).

*Nature of a Problem-Solving Court*

In 2009, this Court was presented with the issue of whether a "problem-solving court" had fundamental jurisdiction, such that it could sanction a criminal defendant who violated a program condition.  The Court held that, because the "drug court" in question was essentially a division of the circuit court – a court of original general jurisdiction – it had the fundamental powers of the circuit court.  *Brown v. State*, 409 Md. 1 (2009).  The Court held that the question whether the procedures of the drug court violated due process could be addressed through "well-developed mechanisms for correcting any violations" – *i.e.*, appellate review and extraordinary writs.  409 Md. at 8-9 & n. 1.  Whether the particular drug court program actually violated due process and the code of judicial conduct because of *ex parte* communications that a judge might have under the program was

---

[6] *See* Comment, *Baltimore City's Drug Treatment Court:  Theory and Practice in an Emerging Field*, 55 Md. L. Rev. 467 (1996).

apparently raised at oral argument of the case,[7] but not resolved by the decision. The following year, this Court adopted a rule that governs the operation of existing problem-solving courts and the creation of new programs and that addressed at least some of the issues raised, but not decided, in *Brown*.

*Maryland Rule 16-207*

In 2010, this Court first adopted a rule governing "problem-solving court programs." That rule is currently codified as Maryland Rule 16-207.[8] That rule describes "problem-solving court program" as "a specialized court docket or program that addresses matters under a court's jurisdiction through a multi-disciplinary and integrated approach incorporating collaboration by the court with other governmental entities, community organizations, and parties." Maryland Rule 16-207(a)(1).

In order to be accepted into such a program, a prospective participant – presumably a defendant in a criminal case in most instances – must execute a written agreement. Maryland Rule 16-207(e)(1). The written agreement is to set forth the requirements and

---

[7] *See* H.E. Cauvin, *Public Defender Calls Venues Unconstitutional*, Washington Post (April 3, 2009).

[8] The rule was originally codified as Maryland Rule 16-206 and governed the operation of existing problem-solving court programs, as well as the creation of new programs. The rule set also forth a process for establishment of a new program.

In 2016, the rule was recodified, with minor changes, as Maryland Rule 16-207. Although Respondents' participation in the Montgomery County drug court program began – and all the events pertinent to this appeal occurred – under the prior codification of the rule, the changes made in 2016 are immaterial to the issues in this case. We shall refer to the current codification and language of the rule in the text.

protocols of the program, the range of sanctions that may be imposed against a participant, and any waiver of rights by the participant (*e.g.,* waiver of a right to counsel).[9] As a further condition of acceptance into the program, the trial court is to examine the prospective participant on the record concerning the agreement and make an explicit finding that he or she is acting knowingly and voluntarily. Maryland Rule 16-207(e)(2).

A program may allow for the imposition of immediate sanctions. Maryland Rule 16-207(f). However, if such a sanction would involve a loss of liberty or termination from the program, the participant is entitled to notice, an opportunity to be heard, and the assistance of counsel before the court makes its decision. *Id.*[10] The rule also provides that a participant who is terminated from a program is to receive credit for time spent incarcerated while in the program against a sentence that is to be served as a result of termination from the program. Maryland Rule 16-207(g).

---

[9] The written agreement is to summarize the protocols of the program to which the participant is agreeing, including the authority of the judge to initiate, permit, and consider *ex parte* communications in connection with the individual's participation in the program. A corresponding amendment was made to Rule 2.9 of the Code of Judicial Conduct – subsequently recodified as Maryland Rule 18-102.9 – to allow a judge in a problem-solving court program to do so if the parties have consented to those protocols. *See* 163rd Report of Standing Committee on Rules of Practice and Procedure (January 13, 2010); Rules Order (March 9, 2010).

[10] If the participant is not represented by counsel at that juncture, the rule contemplates that the trial court will comply with the appropriate rule or statute concerning appointment or waiver of counsel. Maryland Rule 16-207(f).

3.  Montgomery County Adult Drug Court Program

The setting for the issues in this case is a problem-solving court program in the Circuit Court for Montgomery County known as the Montgomery County Adult Drug Court Program. It was first established in December 2004. According to the Policies and Procedures Manual for the program, it is a "collaborative effort … to break the cycle of substance abuse" by providing the structure required for a participant to become alcohol and drug free. The program is limited to non-violent addicted offenders following conviction.[11] A defendant may be directed to the program as a condition of probation following a guilty plea or as a consequence of being charged with a violation of probation. An eligible defendant must consent to participation in the program. Upon successful completion of the program, the participant is released from probation.

The program, which requires a minimum of 20 months to complete, is divided into four phases. Participants advance through those phases by satisfying certain requirements and accomplishing certain goals. For example, to advance from Phase I to Phase II, the participant must, among other things, attend a minimum of three support group meetings each week and have at least 30 consecutive days of clean urinalysis. (Each phase of the program includes a requirement of submitting to random urinalysis.)

---

[11] As indicated in the text, this program is available only as a condition of probation after a defendant has been adjudicated guilty of an offense and sentenced. Some drug court programs may be implemented prior to trial as part of a defendant's conditions of release. *See* Comment, *Baltimore City's Drug Treatment Court: Theory and Practice in an Emerging Field*, 55 Md. L. Rev. 467, 479-83 (1996) (describing a pretrial program in Baltimore City during the 1990s). The analysis in this opinion may not necessarily apply to a pretrial program.

The program manual lists the "key team members" of the program: the judge (referred to as the team leader), the program coordinator, the prosecutor, defense counsel, case managers, and treatment providers. The program manual describes the program as a "non-adversarial, collaborative approach to treatment." It also states that, when a participant violates the program's terms and conditions, the drug court program team will discuss the mandatory sanction to be imposed for non-compliance at a status review hearing, "emphasizing a team, rather than an adversarial process."

Participants receive a Participant Handbook. In addition to providing contact information for team members of the drug court program and important information concerning treatment services, testing, and housing, it also details the "menu" of sanctions for violations of the program's rules. The menu consists of nine-page matrix that lists a range of sanctions. Most sanctions are listed according to three axes: (1) the phase of the program (I through IV); (2) the type of violation (*e.g.*, positive urinalysis, failure to appear for treatment, failure to appear for community service); and (3) the number of prior violations (*i.e.*, first violation, second violation, or more). Some sanctions, referred to as "overall sanctions," do not depend on the phase of the program. The menu also lists some standard sanctions regardless of phase or the number of prior violations. The sanctions range in severity from a verbal warning to "jail" and termination from the program. The

menu is not precise on the length of incarceration and refers only to "jail" or "increased length of time in jail" for some violations.[12]

Pertinent to this appeal, the sanction for a missed urinalysis, which is treated as a positive test result (*i.e.*, indicating illicit drug use), is jail, more frequent testing for two weeks, demotion to a prior phase of the program, and additional sanctions if the participant has had a prior missed or positive urinalysis. Also pertinent to this case, a participant is sanctioned if a urinalysis reveals a low creatinine level, which could be evidence of an attempt to dilute the participant's urine for purposes of evading the test.[13] The sanction for the first low creatinine result is a written warning; any subsequent low creatinine result is are treated as a positive urinalysis.

The handbook advises the participant that the sanctions could be "revised at any time" and that, if so, the participant will receive an updated handbook. It also advises that the drug court program team may consider alternative sanctions if the participant commits multiple violations within a short period of time.

If a defendant wishes to participate in the program, the defendant must execute a written agreement, as required by Maryland Rule 16-207. The "Drug Court Agreement"

---

[12] The program manual is somewhat more specific, specifying "overnight incarceration" and "Thursday-Sunday" incarceration for certain violations, but also refers more vaguely to "escalating periods of jail confinement."

[13] Creatinine is a waste product in human blood derived from protein and the normal breakdown of muscle tissue. It is removed from the blood by the kidneys and eliminated from the body in urine. A low creatinine level may be an indication that a participant in the program has attempted to defeat a urinalysis test for illicit drugs by consuming an excessive amount of water to dilute the participant's urine.

used in the Circuit Court's program is not so much a contract – the only parties executing the agreement are the defendant and the defendant's attorney – as a series of acknowledgments and promises by the participant. Many of the acknowledgments summarize aspects of the program; some incorporate elements of Maryland Rule 16-207.

The written agreement recites a number of the elements of the program – for example, that the program will last at least 20 months, that the participant may be required to take medications and attend at least three recovery meetings every week, that the participant is subject to random alcohol and drug testing, that a failure to report for testing will result in a sanction, and that any attempt to falsify a test, including urine dilution, may result in the participant's termination from the program. In executing the agreement, the participant promises, among other things, to be on time for group meetings, appointments, and court appearances; to refrain from the use or possession of alcohol and illegal drugs and to not associate with persons who use or possess controlled substances. With respect to the imposition of sanctions, the written agreement provides:

> I understand that Drug Court imposes graduated sanctions for lack of compliance with program requirements, including incarceration. I have the right to request and have a formal adversarial hearing before the imposition of a sanction of incarceration or before being terminated from Drug Court.

This appears to be the only reference in the program materials concerning a right to a "formal adversarial hearing." As noted earlier, the program manual indicates the sanctions are ordinarily considered at a status review hearing, which is described as "non-adversarial." Neither the "Drug Court Agreement" nor the other materials elaborate on the

11

nature of the "formal adversarial hearing" that is to precede a sanction of incarceration or whether (and how) it would differ from a normal status review hearing under the program.

## B.     Facts and Proceedings

### 1.     State v. Brookman

*Charges and Guilty Plea in the District Court*

According to the record in this case, on May 26, 2012, Ms. Brookman was initially charged in the District Court of Maryland, sitting in Montgomery County, with four counts related to the theft of jewelry and pawning of stolen jewelry: one count of theft of property valued between $10,000 and $100,000, two counts of theft of property valued between $1,000 and $10,000, and one count of conspiracy to commit theft of property valued between $1,000 and $10,000. She was arrested on those charges on June 7, 2012.

On August 14, 2012, Ms. Brookman pled guilty to one of the theft charges concerning property valued between $1,000 and $10,000; the remaining charges were stetted by the District Court. The District Court sentenced her to 12 months incarceration, a $2,000 fine, and restitution to the victim of the theft and the pawn shop. The court suspended the fine and ten months of the period of incarceration and placed her on probation for two years, with special conditions that she pay the restitution, refrain from any contact with the victim of the theft (her boyfriend's mother), and submit to alcohol and drug evaluation, testing, and treatment. The two months of incarceration was to begin that day with a recommendation of work release. That same day, however, Ms. Brookman appealed her conviction to the Circuit Court for Montgomery County for a *de novo* trial.

12

*Appeal to Circuit Court, Guilty Plea, and Sentencing*

On September 14, 2012, in the Circuit Court, she again pled guilty to one count of theft involving property valued between $1,000 and $10,000. On October 22, 2012, the Circuit Court conducted a sentencing hearing focused primarily on assessing the amount of restitution. Ms. Brookman admitted that she had been addicted to oxycodone for seven years, but claimed to have overcome her addiction during the previous summer. The Circuit Court sentenced Ms. Brookman to 12 months incarceration, which it suspended in favor of two years' probation, and ordered that she pay restitution of $4,500 to the victim. As a special condition of probation, the court directed her to stay away from the victim, to abstain from alcohol and illicit drugs, and to successfully complete a drug and alcohol evaluation and testing program. The court did not refer her to the drug court program at that time.

*Probation Violation and Referral to Drug Court Program*

On December 13, 2013, Ms. Brookman returned to the Circuit Court and admitted that she had violated her probation by virtue of a second-degree assault conviction that year. The Circuit Court sentenced her to one-year imprisonment, again suspended, and placed her on three years' probation with various conditions. One of those conditions was that she successfully complete the Circuit Court's drug court program.

*Progress in Program; Low Creatinine Test Result*

Various status review hearings took place in the Circuit Court over the next two years in connection with Ms. Brookman's participation in the drug court program. Although a urinalysis in July 2014 yielded a low creatinine result, she had successfully

13

advanced to Phase III of the program by early 2016. During the week of February 22, 2016, Ms. Brookman was notified that she had received a second low creatinine result from a urinalysis test. As indicated above, under the policies and procedures governing the drug court program, a second low creatinine test is treated as evidence of an effort to defeat testing for illicit drugs and as a "positive" test result. Moreover, drug court policies also treat any attempt to falsify a test, including by dilution, as grounds for termination from the drug court program. The Circuit Court promptly scheduled a status hearing for February 26, 2016.

*Hearing Concerning Program Violation and Sanction*

Prior to the hearing, Ms. Brookman's counsel filed a request for discovery related to the test and for the analyst who conducted the test to appear at the hearing. At the hearing, Ms. Brookman's counsel requested a postponement in order "to review this information," to obtain input from a chemist as to the reliability of the test, and to go over the results with Ms. Brookman. Counsel noted that Ms. Brookman's test result was close to an acceptable level for creatinine, that it thus might be within the margin of error for an acceptable test, and that there was no other reason to believe that Ms. Brookman was abusing drugs at that time. The prosecutor opposed the defense requests, observed that the laboratory that conducted the test was certified, noted that the issue was not arising in the context of an alleged violation of probation (*i.e.*, that Ms. Brookman was not entitled to a probation violation hearing), and urged the court to impose the immediate sanction contemplated by the drug court program for a positive test result.

14

The Circuit Court did not explicitly rule on Ms. Brookman's request for a postponement to present evidence to contest the test result. Rather, the court permitted Ms. Brookman to make a statement in which she stated she did not know what caused the test result and that she desired to stay in the program. The Circuit Court then summarized briefly the drug court program policies concerning positive urinalysis test results and low creatinine test results, and imposed immediate sanctions for a positive test result. In particular, it changed Ms. Brookman's "sober date," demoted her from Phase III to Phase II of the program (which would subject her to more frequent testing and increased monitoring in the near future), and directed her to be incarcerated overnight.

On March 25, 2016, Ms. Brookman filed an application for leave to appeal.

2. State v. Carnes

*Guilty Plea, Sentencing, and Referral to Drug Court Program*

On December 30, 2013, Mr. Carnes was charged in the Circuit Court for Montgomery County with 46 counts of theft, identity fraud, credit card fraud, conspiracy, and related offenses.[14] On April 15, 2014, he pled guilty to one count of felony theft scheme involving property valued between $1,000 and $10,000, and one count of credit

---

[14] Mr. Carnes had been initially charged in three different cases in the District Court of Maryland, sitting in Montgomery County, while he was incarcerated with respect to a different case in Howard County. The Montgomery County charges were eventually consolidated in the Circuit Court for Montgomery County and Mr. Carnes was transported by writ from Howard County to the Circuit Court for Montgomery County to resolve the Montgomery County case.

card identity fraud. At the guilty plea hearing, the Circuit Court was informed that Mr. Carnes had been accepted into the drug court program.

On June 11, 2014, Mr. Carnes was sentenced to 10 years incarceration for the felony theft scheme and a concurrent 18 month sentence for identity fraud, with credit for time he had already spent in custody. The terms of incarceration were suspended in favor of three years supervised probation with the condition that Mr. Carnes complete the drug court program. Mr. Carnes did not seek leave to appeal at that time.

*Missed Urinalysis*

Approximately a year and a half later, Mr. Carnes had advanced to Phase III of the program and was working as a truck driver. Before going to work on February 17, 2016, he called the program's urinalysis phone line at 7:30 a.m. to find out whether he was required to report for a random urinalysis test that day. The list of participants to be tested that day had apparently not yet been updated and at 8 a.m. Mr. Carnes went to work, without having resolved whether he had to report for testing that day. During the day, his truck broke down and after taking four hours to return from Cumberland to Montgomery County, he arrived home at about 1 a.m. the next morning. He called the urinalysis line at 1:30 a.m. and learned that he had in fact been selected for a random urinalysis test the previous day. He immediately called one of the drug court program staff members and reported to a testing facility at 3:00 a.m. The test result was negative for forbidden substances. Later that day, he underwent full blood and urine tests, which were also negative.

*Hearing Concerning Program Violation and Sanction*

On February 26, 2016, the Circuit Court conducted a drug court status hearing concerning Mr. Carnes' failure to appear for the urinalysis test that had been randomly scheduled for February 17. At the outset, Mr. Carnes' counsel stated an intent to present evidence that Mr. Carnes did not actually miss a urinalysis after hearing "the State's evidence." The Circuit Court responded that there was "no evidentiary requirement for there to be any demonstration" by the State. What followed was essentially a proffer of the underlying facts by defense counsel, which appeared to be accepted by the prosecutor and the court.

Based on that proffer, Mr. Carnes' counsel urged the court to regard the situation as a "late urinalysis" – for which the sanctions menu did not state any particular sanction – rather than a "missed urinalysis" and to refrain from imposing a sanction, in light of the fact that the tests on February 18 were all "clean." Counsel argued that strict application of the sanctions menu without regard to Mr. Carnes' individual circumstances would violate his right to due process.

In response, the prosecutor stated that other participants who had appeared late at the testing center had been treated as having a missed urinalysis, that all participants were on notice of the sanctions menu, and that the situation could have been avoided if Mr. Carnes had called his case manager during the day before he returned to Montgomery County. In any event, the prosecutor argued, program sanctions should not be imposed on a "case-by-case" basis.

The Circuit Court stated that a "bedrock and core component" of the drug court program was random urinalysis. The court opined that it was incumbent on Mr. Carnes, after his unsuccessful effort at 7:30 a.m., to call again during the day to determine whether he had been randomly selected for testing that day. The court observed that there was no exception in the menu of sanctions for a "late urinalysis" and that Mr. Carnes was asking to be treated differently from other participants in the program. Accordingly, the court imposed the sanctions specified in the drug court program for a missed urinalysis which, as indicated above, is treated as a positive test result for illegal substance use. That sanction includes, among other things, overnight incarceration, delay of graduation date from the program, and change of sober date. However, the court postponed the requirement of overnight incarceration so that Mr. Carnes could participate in his daughter's birthday celebration that night.

On March 25, 2016, Mr. Carnes filed an application for leave to appeal.

3.     Court of Special Appeals Decision

On June 6, 2016, the Court of Special Appeals granted leave to appeal for both Ms. Brookman and Mr. Carnes and consolidated the two appeals. In a published decision, the intermediate appellate court held that the hearings at which the Circuit Court imposed sanctions against Ms. Brookman and Mr. Carnes violated their rights to due process. Accordingly, it vacated the Circuit Court's decisions and remanded both cases for further proceedings. 232 Md. App. 489 (2017).

4.      Epilogue

After the decision of the Court of Special Appeals, the participation of both Respondents in the drug court program was terminated, although with different results.  On May 17, 2017, the Circuit Court closed Mr. Carnes' probation satisfactorily and recognized him as a "successful graduate" of the drug court program.   On May 25, 2017, the Circuit Court closed Ms. Brookman's probation unsatisfactorily and terminated her participation in the drug court program as "unsuccessful."

We granted the State's petition for a writ of *certiorari* and the joint cross-petition of Ms. Brookman and Mr. Carnes.[15]

---

[15] In their opposition to the State's petition for *certiorari*, the Respondents argued that these cases became moot as a result of their respective terminations from the drug court program shortly after the Court of Special Appeals issued its opinion.  Respondents have not pressed that contention in their briefs or at oral argument.  In any event, while it is true that there is no relief that we can afford to Ms. Brookman or Mr. Carnes with respect to their participation in the drug court program, the issues raised in this appeal are "matters of important public concern, which may frequently recur, and which, because of inherent time constraints, may not be able to be afforded complete appellate review."  *Attorney General v. Anne Arundel County School Bus Contractors Ass'n*, 286 Md. 324, 328 (1979).  Accordingly, this is a circumstance in which we choose to exercise our discretion to decide what would otherwise be a moot case.  *See Powell v. Department of Health*, 455 Md. 520, 539-41 (2017).

## II

## Discussion

There are two questions before us, one procedural and one substantive:

(1) Is there appellate jurisdiction?

(2) If so, did the process followed by the Circuit Court in imposing sanctions in these cases violate the due process guarantees of the Maryland and federal constitutions?

### A. *Whether There is Appellate Jurisdiction*

The threshold question is whether there is appellate jurisdiction of this case.

Both Ms. Brookman and Mr. Carnes filed applications for leave to appeal, which were granted by the Court of Special Appeals. Before us, they now take the position that at least some sanctions imposed by a circuit court pursuant to a drug court program – including those imposed in these two cases – constitute a final judgment from which a defendant has a *right of appeal* that does not depend on the exercise of discretion by the Court of Special Appeals. The State has argued consistently that a participant in a drug court program has *no right of appeal*, even by application for leave to appeal, from the imposition of sanctions by the Circuit Court.

It is often said that appellate jurisdiction is entirely statutory. *E.g.*, *Seward v. State*, 446 Md. 171, 176 (2016). The General Assembly has provided that, in a criminal case, a defendant has a right of appeal from a "final judgment" entered by a circuit court. Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-301. The defendant has such a right even though imposition or execution of sentence has been suspended. *Id.*

20

A "final judgment" is defined in statute, somewhat circularly, as one "from which an appeal, application for leave to appeal, or petition for certiorari may be taken." CJ §12-101(f). As a result, the Legislature has generally left it to this Court to define the contours of a "final judgment." *Metro Maintenance Systems South, Inc. v. Milburn*, 442 Md. 289, 297 (2015). This Court has described a "final judgment" as:

> one that either determines and concludes the rights of the parties involved or denies a party the means to prosecute or defend his or her rights and interests in the subject matter of the proceeding. Important is whether any further order is to be issued or whether any further action is to be taken in the case.

*Douglas v. State*, 423 Md. 156, 171 (2011 (citations, quotation marks, and related editing marks omitted). The Court has sometimes reduced this formula to a shorthand phrase: a final judgment is one that "puts a party out of court." *Metro Maintenance*, 442 Md. at 299.

For many years, this Court consistently held that an order revoking probation and reinstating a previously suspended sentence of incarceration was an appealable final judgment. *See Kupfer v. State*, 287 Md. 540, 542-43 (1980) (collecting cases). In 1980, this Court extended that holding to an order modifying and extending the period of probation based on a finding that the defendant had violated the conditions of probation. *Id.*; *see also Maus v. State*, 311 Md. 85 (1987) (probation revocation as a result of defendant's admission of violation appealable as final judgment). In 1991, the Legislature limited appeals as of right from orders revoking probation. Chapter 240, Laws of Maryland

21

1991, *codified at* CJ §12-302(g).[16]   As a result, appellate review of a probation revocation order may be sought only by filing an application for leave to appeal. *Id*.

Respondents concede that ordinarily sanctions imposed in connection with a drug court program are not final judgments as no court action is involved. However, they argue that the sanctions imposed in their cases fit the definition of final judgment because the imposition of immediate incarceration "left no doubt" that the court had finally resolved their alleged violations of the program's rules.

In response, the State analogizes these cases to the situation in *Fuller v. State*, 397 Md. 372 (2007). In *Fuller*, an inmate petitioned a circuit court for commitment to a substance abuse program as permitted by statute. When the circuit court denied the petition, the inmate sought to appeal that decision. This Court held that the circuit court's decision was not appealable, either as a final judgment or under the collateral order doctrine, largely on the basis that such a petition could be repeatedly filed under the statute

---

[16] The bill was introduced at the request of the Maryland Judiciary to reduce the number of frivolous appeals in the Court of Special Appeals. *See* Memorandum of George B. Riggin, Jr., State Court Administrator and Executive Secretary, Maryland Judicial Conference, to Delegate John Arnick, Chair of House Judiciary Committee (January 25, 1991) (requesting assistance in introducing certain bills on behalf of the Judicial Conference, including a proposal to prohibit appeals as of right from probation revocation orders and stating that the purpose of the bill is to reduce the number of frivolous appeals, while permitting meritorious appeals to be heard). The stated purpose of the bill was reiterated in the Senate Floor Report. *See* Senate Floor Report for House Bill 988 (1991). The bill was enacted without amendment. In a bill review letter to the Governor, the Attorney General concluded that this restriction on the existing right of appeal was constitutional because there is no "fundamental right" to an appeal under Maryland law and that a limitation of a probationer's right to appeal did not offend due process rights. Letter of Attorney General J. Joseph Curran, Jr. to Governor William Donald Schaefer re House Bills 929 and 988 (April 18, 1991).

– thereby rendering a denial non-final – and that the Legislature had not provided for an appeal from a denial in that statute. The State attempts to draw an analogy of the statute in *Fuller* to Rule 16-207, which also contains no reference to an appeal. Of course, there is a critical difference between a statute – which may confer or restrict a right of appeal – and a court rule which, although it can create an appellate process, cannot enlarge or reduce a court's appellate jurisdiction.

We find neither position persuasive. As the Court of Special Appeals indicated, the right to file an application or leave to appeal under CJ §12-302(g) seems a "better fit" for these cases. 232 Md. App. at 501-2. In our view, the sanction of immediate incarceration equates to a partial revocation of probation.[17] Defendants such as Ms. Brookman and Mr. Carnes participate in the drug court program as a condition of probation following an adjudication of guilt – in their cases, as a result of a guilty plea. Apart from setting conditions of release, imposing sentence, or exercising its contempt power (which is not implicated in these cases), the Circuit Court has no free-floating power to incarcerate – or to require an individual to participate in a drug program. The imposition of the sanction of incarceration is rooted in the court's authority to revoke probation and require a defendant to serve a suspended sentence of imprisonment. *See DiMeglio v. State*, 201 Md. App. 287, 305 (2011) (equating sanction imposed under drug court program with sanction for violation of probation in the context of considering alleged double jeopardy issue). Rule

---

[17] Although Ms. Brookman and Mr. Carnes both received sanctions of overnight incarceration, as indicated earlier, the program materials indicate that sanctions may include longer periods of incarceration of unspecified length.

16-207 recognizes the relationship between a suspended sentence of imprisonment and a program sanction of incarceration by providing for credit against any period of imprisonment to be served by a participant who is terminated from a program. Maryland Rule 16-207(g).

Finally, we note that, when this Court upheld the fundamental jurisdiction of a circuit court implementing a drug court program in *Brown*, *supra*, it relied on the fact that the "drug court" was in essence a division of the circuit court and that any alleged violations of constitutional guarantees in that court could be resolved through the usual mechanisms of appellate review and prerogative writs. While the *Brown* court did not delve into the precise scope of appellate jurisdiction, its rejection of a constitutional challenge to a drug court program was premised on the availability of the "usual mechanisms" of appellate review.[18]

Thus, we agree with the Court of Special Appeals that, to the extent that appellate review of a sanction under a drug court program is available, it must be pursued by application for leave to appeal pursuant to CJ §12-302(g). We hold that such an application

---

[18] The Dissenting Opinion suggests that the reference in *Brown* to appellate review as a mechanism for correcting violations of a defendant's rights by a problem-solving court was *dicta*. Dissenting slip op. at 17-18 n.12. However, the statement that "well-developed mechanisms" such as appellate review would be available to correct errors of a problem-solving court was part of the *Brown* Court's reasoning that a circuit court administering a drug court program has fundamental jurisdiction. It was therefore integral to its holding, as the final paragraph of that section of the *Brown* opinion demonstrates. *See Brown*, 409 Md. at 9.

24

may be filed when a Circuit Court imposes a sanction of immediate incarceration pursuant to a drug court program that a defendant participates in as a condition of probation.[19]

## B. Whether Hearings Conducted by the Circuit Court Complied with the Requirements of Due Process

Respondents assert that the hearings at which they were sanctioned in the Circuit Court violated their due process rights in two ways: (1) the court concluded that they had committed a violation without permitting them to contest the fact of a violation and (2) the court imposed a pre-fixed sanction from the sanctions menu without considering their individual circumstances.

As this Court recognized in *Brown, supra*, a drug court program like the Montgomery County Adult Drug Court is essentially a division of the circuit court. Its coercive powers, such as its power to incarcerate, derive from powers a circuit court has under the criminal law. Those powers must be exercised in accordance with due process. The drug court program of the Circuit Court is rooted in that court's authority to set conditions of probation. Both Ms. Brookman and Mr. Carnes were adjudicated guilty of criminal charges as a result of guilty pleas. In both cases the Circuit Court imposed a sentence that included a period of probation. A special condition of that probation – set

---

[19] The Court of Special Appeals also held that a defendant whose participation in the program is extended also has a right to file an application for leave to appeal. We decline to adopt that holding, at least in regards to these cases. As best we can tell from the program materials, there is no pre-ordained length of time for participation in the Montgomery County Adult Drug Court Program. Participation would not extend beyond the period of probation, unless probation was modified or revoked, which may itself trigger appellate rights.

25

only after the court had determined that they were eligible for the drug court program – was that they successfully complete the drug court program.[20]  It was similar to other conditions of probation in requiring the defendant to participate in a program designed to alleviate a root cause of their criminal activity.  It was different from other programs in that the drug court program operates under the auspices and authority of the Circuit Court in accordance with Maryland Rule 16-207.  That difference means that the program has the advantage of employing judicial powers to accomplish its ends; it also means that those powers must be employed in accordance with the constraints set by rule, statute, and constitution.

Because a revocation of probation may result in a loss of liberty, due process requires that an individual on probation have an opportunity for a hearing having certain components before the probation is revoked.  *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *cf. Morrissey v. Brewer*, 408 U.S. 471 (1972) (parole revocation hearing must satisfy certain standards of due process).  In particular, the minimum requirements for a hearing concerning revocation of probation must include at least the following elements: (1) written notice of the alleged violation; (2) disclosure of the evidence on which the alleged violation is based; (3) an opportunity to be heard and to present witnesses and documentary evidence; (4) an opportunity to confront and cross-examine adverse

---

[20] The record before us does not contain an executed copy of a "Drug Court Agreement" for either Ms. Brookman or Mr. Carnes.  Moreover, there is no indication – at least in the transcripts of hearings in this record – that either of them was examined by the Circuit Court concerning their understanding of the agreement as a condition of acceptance into the program, as contemplated by Maryland Rule 16-207(e).

witnesses. *Gagnon*, 411 U.S. at 786; see also Maryland Rule 4-347(e) (incorporating due process requirements in rule governing hearings on revocation of probation).

These protections are necessary because, as the Supreme Court explained: "Both the probationer … and the State have interests in the accurate finding of fact and the informed use of discretion – the probationer … to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community." *Gagnon*, 411 U.S. at 785. As Respondents concede, due process does not require that such a hearing be conducted under the formal rules of evidence.

Rule 16-207 recognizes the need to provide such due process protections when a sanction imposed as part of a drug court program threatens a loss of liberty. The rule provides, in pertinent part:

> …if the participant is considered for the imposition of a sanction involving the loss of liberty or termination from the program, the participant shall be afforded notice, an opportunity to be heard, and the right to be represented by an attorney before the court makes its decision.

Maryland Rule 16-207(f).[21] The rule goes on to provide that, in the case of a criminal defendant who appears without counsel at such a hearing, the court is to follow the procedures set forth in Maryland Rule 4-215 for appointing, or finding a waiver of, counsel.

---

[21] As noted earlier, this language is identical to what appeared in former Rule 16-206(e), at the time of the hearings in Respondents' cases, except that the former rule used the term "counsel" instead of "attorney."

This provision is thus clearly applicable when a court considers the imposition of a sanction of incarceration in a drug court program.

As noted earlier, the "Drug Court Agreement" used in the Circuit Court's program implicitly promises a participant the right to a "formal adversarial hearing" before the imposition of a sanction of incarceration or termination from the program. The "formal adversarial hearing" is not described elsewhere in the program materials and it is not clear how such a hearing differs from a typical status review hearing under the program. Presumably it encompasses at least the advance notice, the opportunity to be heard, and the assistance of counsel required by Maryland Rule 16-407(f).

Our review of the transcripts of the sanction hearings in these cases reveals that they were adversarial in some sense. Although the prosecutors and defense counsel may have been considered members of the same drug court "team," they certainly expressed opposing views concerning the process to be followed at the hearings and the sanctions to be imposed. In addition, in both cases there was notice of the alleged violation, representation by counsel, and an opportunity for the participant or counsel to present his or her position to the Circuit Court concerning the alleged violation and proposed sanction.

In our view, however, the hearings fell short of the requirements of due process. An "opportunity to be heard" is meaningless if the result is pre-ordained regardless of what the decision maker hears. As the Supreme Court explained, due process advances the interests in accurate factfinding and "the informed use of [judicial] discretion." In these cases, the Circuit Court, undoubtedly motivated by a desire to uphold the protocols of the program, in one case did not consider a request to contest the accuracy of the fact of a violation and,

28

in the other, disclaimed "the informed use of [judicial] discretion" in determining the sanction.

In Ms. Brookman's case, the Circuit Court essentially assumed that the factual predicate of a program violation was met and allowed no opportunity for Ms. Brookman's counsel to review the urinalysis test result with an expert and possibly present evidence negating the finding of a program violation before it imposed a sanction of incarceration. It might well be that the court, after giving Ms. Brookman's counsel such an opportunity and considering whatever evidence or argument Ms. Brookman ultimately provided, would still have concluded that the test result was sufficiently indicative of an effort to evade the urinalysis test. But counsel was entitled to an opportunity to change the judicial mind and persuade it that scientific evidence would bear on the court's decision. This is not to say that someone in Ms. Brookman's position would always be entitled to a postponement or to present any evidence that participant desired. But, in Ms. Brookman's case, the court never addressed her request at all, but proceeded directly to imposing sanctions.

Mr. Carnes' case is less problematic in that respect, as the process by which the factual predicate was established was as favorable to him as he could expect.[22] While the Circuit Court did not require the State to formally present evidence that Mr. Carnes had failed to appear for a random urinalysis on February 17, his absence from the testing facility on that date was uncontested and could likely have been proven through documentary

---

[22] We note, however, that the court began the hearing by announcing that the purpose of the proceeding was "imposition of a sanction," and also declared that there was no need for the State to present any evidence, thus leaping over the need to find a predicate violation. In another case, with contested facts, this would be problematic.

29

evidence from the testing facility. The court permitted Mr. Carnes' counsel to proffer his mitigating evidence without subjecting Mr. Carnes to cross-examination. He could hardly have hoped for more favorable presentation of the factual predicate at a full-blown mini-trial.

The problem in Mr. Carnes' case was that the Circuit Court appeared to believe that the program had relieved the court of its discretion to take into account those mitigating circumstances and to refrain from incarcerating Mr. Carnes. A judge who presides over a drug court program may be a "team member," but the judge does not relinquish the discretion conferred on judges by statute and rule to the program's sanctions menu. This is not to say that the court should have imposed a different sanction or no sanction – just that it failed to recognize that it had those options.

### C. *Whether the Therapeutic Benefits of a Drug Court Program Justify a Limit on Due Process Protections and Appellate Rights*

The Dissenting Opinion discounts the requirements of due process and appellate rights in light of the potential therapeutic aspects of the drug court program.[23] The

---

[23] The Dissenting Opinion includes a number of quotations from the minutes of January 8, 2010 meeting of the Rules Committee. Most of those quotations – actually paraphrases of what was said – are not statements of the Rules Committee itself, or even members of the Committee, but of others in attendance at that meeting. Most of the discussion at that meeting concerned whether a prospective participant in a drug court program would receive adequate notice of the right to counsel and of the program's requirements and sanctions. The proponents stated that those concerns would be alleviated by having a participant execute a written agreement and by a detailed on-the-record litany between the court and the participant – neither of which appears in the record of the cases before us.

None of the discussion at the January 8, 2010 Rules Committee meeting concerned the appealability of intermediate sanctions – unsurprising as a court rule cannot expand or

Dissenting Opinion does not indicate what, if any, limits it would place on the authority of a trial court to use incarceration as an intermediate sanction in a drug court program without the possibility of appellate review. Although the Petitioners in these cases suffered only overnight incarceration, the sanctions menu provides for longer periods of incarceration ("Thursday-Sunday" and "increased length of time in jail"). The Dissenting Opinion suggests no standard for any limits on the use of jail as an intermediate sanction – three days? one week? What if the judge presiding over the drug court program decides that it is in the participant's therapeutic interest to be jailed for a month to avoid bad influences on the street? The Dissenting Opinion would not preclude such a sanction. And if the court neglects to hold the hearing required by Rule 16-207 or otherwise violates the due process rights of the participant in the course of ordering incarceration, that error would

reduce appellate jurisdiction. Interestingly, however, there was some discussion of when a participant would be entitled to a due process hearing. The version of the rule that was under consideration for most of the meeting provided for a hearing prior to termination from a program, but not when an intermediate sanction was proposed. Rules Committee Minutes (January 8, 2010) at pp. 39-42 (draft of proposed rule). Toward the end of the discussion, the Public Defender urged the Committee to also provide for a due process hearing when a sanction of incarceration was proposed so that, when a participant disputes the violation, "they can challenge the factual nature of the allegation that a violation has occurred." The Committee did so in its final version of the proposed rule. *Id*. at pp. 104-7 (amended proposed rule). This Court later adopted that proposal, including the hearing requirement that now appears in Maryland Rule 16-207(f).

Of course, none of the Committee minutes were before this Court when it adopted the rule, so they are not conclusive as to the Court's intent. However, it appears that, when it proposed a due process hearing for an intermediate sanction of incarceration, the Rules Committee did so with the understanding that "the factual nature of the allegation" could be challenged at that hearing.

escape review because, under the Dissenting Opinion's approach, the imposition of such a sanction is not appealable, unless the court later revoked probation.[24]

A recent federal appellate court decision demonstrates that these concerns are not theoretical. *See Hoffman v. Knoebel*, ___ F.3d ___ (7th Cir. July 3, 2018), 2018 WL 3233546. That case concerned a drug court program administered by an Indiana state trial court. As recounted in that decision, the basic parameters of the drug court program were similar to those of the Montgomery County Adult Drug Court. 2018 WL 3233546 at *1-2. The program allowed for the "drug court" to impose various types of intermediate sanctions to encourage compliance with the program requirements. *Id*. Indiana law provided specific due process protections if incarceration were contemplated as an intermediate sanction – protections that were spelled out in greater detail than in our Rule 16-207.[25] *Id*. at *3.

Beginning in 2012, however, the program, in the words of the Seventh Circuit, "went seriously awry." *Id*. at *2. Participants were jailed as an intermediate sanction for as long as 220 days, and sanctions were imposed without the due process protections

---

[24] The Dissenting Opinion states in a couple instances that its position is that an intermediate sanction of incarceration is not "immediately" appealable. *See* Dissenting slip op. at 9, 13. However, as the Dissenting Opinion ultimately appears to concede, what it is really saying is that such a sanction is not appealable at all, unless the court later happens to revoke probation. *Id*. at 13-14 & n.8. Of course, that is an event that may never happen or that may happen for reasons completely unrelated to the incarceration of the participant.

[25] The pertinent Indiana statute required that, before sanctions were imposed, a participant had to be given written notice, disclosure of the evidence against him or her, the opportunity to confront and cross-examine witnesses, and assistance of counsel. 2018 WL 3233546 at *3.

specified by state law.  When the abuses came to light and a number of the participants

filed a federal civil rights class action, the Indiana Supreme Court shut down the drug court

program.  *Id*. at *1.  Had an appeal process been in place to review alleged violations of

the due process rights of participants as they occurred, it seems unlikely that the drug court

program would have proceeded that far off the rails.

The plaintiffs in *Hoffman* had been jailed for lengthy periods for a variety of

violations of the drug court program – failed or diluted drug tests, missed status hearings,

and instances of drug or alcohol use – without the benefit of due process.  *Id*. at *3.  The

federal district court characterized it as a "wholly indefensible system."  *Id*.  The Seventh

Circuit concluded that "[w]e have no doubt that the plaintiffs' constitutional rights were

violated during their time as participants in the [drug court program]."  *Id*. at *7.  However,

it held that the particular defendants in the case – a case manager, a probation officer, a

court bailiff, and the sheriff's department – had no supervisory authority over the judge in

charge of the drug court program and, in part for that reason, were not responsible for the

plaintiffs' constitutional injuries.  *Id*. at *3-6.

We may be heartened that, so far as we know, nothing like the Indiana experience

recounted in *Hoffman* has happened in problem-solving courts in Maryland.  But the lesson

from the Indiana experience is that the promise of due process protections in a rule or

statute may be of little comfort without the availability of an appellate process to review

whether that promise is kept. As this Court noted in *Brown*, Maryland law provides such a process.[26]

## III

## Conclusion

For the reasons set forth above, we hold:

(1)     When a Circuit Court administering a drug court program under Maryland Rule 16-207 imposes an immediate sanction of incarceration for a program violation by a participant, the participant may seek appellate review of that decision by filing an application for leave to appeal.

(2)     When a Circuit Court administering a drug court program under Maryland Rule 16-207 considers the imposition of a sanction involving the loss of liberty or termination from the program, it must provide certain minimum due process protections as set forth in Rule 16-207(f), including notice, an opportunity to be heard, and the right to representation by counsel. The constitutional guarantee of procedural due process also requires that a defendant have the opportunity to confront and contest adverse evidence

---

[26] The Dissenting Opinion suggests that the right to file an application for leave to appeal from an intermediate sanction of incarceration is not "practical" because, in many of these cases, the issue may be moot by the time an appellate court issues a decision. Dissenting slip op. at 10-12. There are at least two answers to that objection. First, we believe that the judges who administer these programs wish to do so for the benefit of the participants in compliance with State and constitutional law. We are not so cynical to assume that they will ignore guidance from the appellate courts on the requirements of due process, even if it is too late to apply in a particular case. Second, to the extent that a situation arises similar to that in the Indiana case, it can be limited before serious constitutional injuries occur.

and the opportunity to have the court consider factors that mitigate against a sanction of

incarceration in the particular case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY MONTGOMERY COUNTY.**

35

IN THE COURT OF APPEALS
OF MARYLAND

No. 29

September Term, 2017

STATE OF MARYLAND

v.

CRYSTAL BROOKMAN

STATE OF MARYLAND

v.

MARVIN RANDY CARNES

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

Concurring Opinion by Getty, J., which Hotten,
J. joins.

Filed: July 31, 2018

Respectfully, I concur with the judgment of the Majority, but write separately to set forth my view of the required procedural due process in drug court proceedings. The majority opinion concludes that the proceedings in these two cases fell short of the required due process protections, comparing drug court to a revocation of parole or probation. In contrast, the dissent opines that the proceedings below complied with due process because the drug court participants were afforded the limited protections outlined in Maryland Rule 16-207(f). However, in my view, this Court should rely on the significant and long-standing jurisprudence that due process protections are based on the specific circumstances of the proceeding.

In *Morrissey v. Brewer*, the Supreme Court analyzed whether due process protections apply in parole revocations. 408 U.S. 471 (1972). Pertinent to the issue before this Court, the Supreme Court stated that the "question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." *Id.* at 481. The Supreme Court further explained that "[o]nce it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that *due process is flexible and calls for such procedural protections as the particular situation demands*." *Id.* (Emphasis added). Pursuant to that principle, the Supreme Court considered the interests of the State in revocation of parole, the stages of the parole revocation, and the nature of revocation of parole proceedings. Ultimately, the Supreme Court held that the minimum requirements for due process in the context of revocation of probation include: (1) written notice of the claimed violations of

parole; (2) disclosure to the parolee of evidence against him; (3) opportunity to be heard in person and present witnesses and evidence; (4) a neutral and detached hearing body; and (5) a written statement of evidence and reasoning by the factfinders. *Id.* at 488–489.

I agree with the majority that certain drug court sanctions, including incarceration and termination from the program, deprives drug court participants of liberty and property interests protected by the Fourteenth Amendment. However, I disagree that this Court should require the same due process protections for Maryland drug court as the Supreme Court found applicable to revocation of parole or probation.

Maryland has similarly held that "[n]o particular procedure is required in all cases. 'On the contrary, due process is flexible and calls only for such procedural protections as the particular situation demands. *Procedures adequate under one set of facts may not be sufficient in a different situation.*'" *Miserandino v. Resort Properties, Inc.*, 345 Md. 43, 52 (1997) (emphasis added) (quoting *Department of Transportation v. Armacost*, 299 Md. 392, 416 (1984)). This Court has further indicated that the "minimum requirements of procedural due process are 'notice and opportunity for hearing appropriate to the nature of the case.'" *State v. Cates*, 417 Md. 678, 698 (2011) (quoting *Canaj, Inc. v. Baker & Div. Phase III,* 391 Md. 374, 424 (2006)).

Just as this Court has determined notice and an opportunity to be heard constitute the minimum due process protections in a majority of circumstances, the Rules Committee similarly concluded that the minimum due process protections for drug court sanctions involving loss of liberty or termination include "notice, an opportunity to be heard, and the right to be represented by an attorney before the court makes its decision." Md. Rule 16-

2

207(f). However, this does not necessarily end the due process analysis. Instead, a drug court judge should also consider the unique characteristics of these problem-solving courts as well as the specific circumstances of the individual proceeding to determine whether additional due process protections should be afforded to the participant.

First and foremost, a drug court judge cannot ignore that participation in drug court is voluntary. Specifically, Maryland Rule 16-207(e) requires a defendant to sign a written agreement under which he or she commits to the drug court program requirements, protocols, possible sanctions, and any waived rights. A defendant is also able to obtain advice of counsel before entering into the drug court agreement. *See* Md. Rule 16-207(e)(1). Furthermore, a drug court is also required to examine the prospective participant on the record in order to confirm that the defendant understands the agreement and is *knowingly and voluntarily* entering into the drug court participation agreement. Md. Rule 16-207(e)(2). A drug court participant is also free to voluntarily leave the drug court treatment program, resulting in an automatic violation of probation. Therefore, it is ultimately the *defendant's choice* whether or not to participate in a Maryland drug court treatment program and to accept all of the possible sanctions of that program. The voluntary nature of drug court should most certainly be a factor in the procedural due process analysis.

When a defendant chooses to sign the drug court written agreement, the participant must specifically acknowledge and agree to two pertinent characteristics of drug court: (1) the program is a non-adversarial and collaborative treatment approach; and (2) the program

3

permits immediate sanctions for lack of compliance with the program. These features will also be an important factor in the drug court judge's due process protections analysis.

These problem-solving courts employ a "team" approach in which the judge, prosecuting attorney, defense counsel, drug court case manager, probation officer, and counselors work together as a team rather than in their traditional roles of the adversary system. *See* Andrew Fulkerson, How Much Process is Due in the Drug Court?, 48 CRIM. LAW BULLETIN 655, 658 (2012). This collaborative nature often involves meetings between drug court judges, the prosecuting attorney, defense counsel, and other team members prior to status review hearings in order to determine what sanction will be appropriate for certain participants and certain violations. Both of the drug court participants in the cases before this Court participated in the Montgomery County Drug Court. The drug court handbook for the Circuit Court for Montgomery County, which both Ms. Brookman and Mr. Carnes agreed to review under the terms of their participation agreement, outlines that the "Drug Court Team will discuss the mandatory sanction to be imposed for non-compliance, emphasizing a team, rather than an adversarial process."

On the one hand, a drug court judge may very well find that this collaborative approach weighs in favor of less procedural due process protections because the drug court participant knew and accepted this characteristic of the program. On the other hand, when a drug court judge learns of evidence that the team did not know or discuss prior to the status review hearing, the judge may conclude that more procedural due process protections are appropriate.

4

The Circuit Court for Montgomery County drug court handbook also specifically emphasizes the need for sanctions to be imposed in a rapid and swift fashion in order to provide an incentive for drug court participants to modify negative behaviors. Indeed, as the dissent properly highlights, these problem-solving courts are successful in large part due to the potential for immediate consequences as a result of noncompliance. *See* Md. Rule 16-207(f). The need for an immediate sanction to preserve the effectiveness of the drug court as well as the fact that the participant knew and agreed to swift sanctions will likely weigh against additional procedural due process protections.

In addition to the overall characteristics of these problem-solving courts, a drug court judge should also consider the specific circumstances of the proceeding to determine if more procedural due process than the minimum under Maryland Rule 16-207(f) is required. For example, if the drug court team becomes aware that a certain participant violated the program for the first time and the prosecuting attorney requests a sanction of three nights of incarceration or termination from the program, a drug court judge may very well find it necessary to afford the drug court participant: notice; an opportunity to postpone the hearing; an opportunity to create a strategy of defense with counsel; an opportunity to obtain more evidence; an opportunity to present documents as evidence; and, an opportunity to call witnesses. In the alternative, if the proposed drug court sanction is simply overnight incarceration for a third-time violator, a drug court judge may find it prudent simply to provide the participant with notice, an opportunity to explain himself or herself, as well as an opportunity to be represented by counsel during the short hearing. Just as in all procedural due process analyses, the drug court should be given the chance to

5

consider the specific circumstances of the case and determine the appropriate due process protections.

Ultimately, I agree with the majority that the proceedings in the two cases below fell short of the minimum due process protections outlined in Maryland Rule 16-207(f). However, I emphasize that the required procedural due process for drug courts should not be viewed under the lens of a different type of proceeding. It would be illogical to require drug court judges and drug court teams on the front line of the battle against the opioid crisis in this State to meet the same procedural due process requirements for revocation of parole, which results from a violation of mandatory parole conditions.

Instead, the voluntary, collaborative, and swift nature of the drug court treatment program will be an inherent consideration for a drug court judge faced with the question of what procedural due process is required. Drug court judges should also be granted deference to determine what if any additional due process protections beyond the minimum afforded under Maryland Rule 16-207(f) are appropriate given the circumstances of the specific proceeding, including the alleged violation, the proposed sanction, and the drug court participant's history in the program.

The majority is also correct in holding that drug court participants have the right to file an application for leave to appeal after a drug court judge imposes a sanction of immediate incarceration. A drug court judge's analysis of the required procedural due process prior to the imposition of certain sanctions would be rendered unreviewable if there was no right to file an application for leave to appeal. Indeed, the Court of Special Appeals can deny a drug court participant's appeal application if that court believes the drug court

6

judge properly applied the minimum procedural due process requirements under Maryland Rule 16-207(f) and correctly determined whether additional due process protections were necessary.

Judge Hotten has authorized me to state that she joins this concurring opinion.

Circuit Court for Montgomery County
Case No. 121215C
Case No. 124172C
Argued: January 5, 2018

STATE OF MARYLAND

v.

CRYSTAL BROOKMAN
_____

STATE OF MARYLAND

v.

MARVIN RANDY CARNES

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.
_____

Dissenting Opinion by Greene, J., which
Adkins and Watts, JJ., join.
_____

Filed:   July 31, 2018

Respectfully, I dissent. Although this case presents to the Court the issue of due process, the question at the heart of this case is how much process is due to participants in diversionary proceedings related to substance abuse rehabilitation. Crystal Brookman and Marvin Randy Carnes (collectively "Respondents") pleaded guilty to criminal charges brought against them in the Circuit Court for Montgomery County. As a part of their probation, Respondents qualified for the Montgomery County Adult Drug Court program ("Drug Court"), and Respondents agreed to successfully complete that program as a condition of their probation. In 2016, Respondents failed to comply with the requirements of Drug Court, and, following hearings on the alleged infractions, the judges who presided over their respective cases, pursuant to the internal administrative sanctions of the program, imposed negative sanctions in each case which resulted in a brief period of incarceration. Neither participant of the program was discharged from the program nor charged with a violation of probation at that time. After Respondents filed applications for leave to appeal, the Court of Special Appeals consolidated their cases. The intermediate appellate court held that Respondents were entitled to appeal the sanction of incarceration and that Respondents were denied due process during their hearings in Drug Court. The State sought review of the decision of the Court of Special Appeals, and we granted *certiorari*.

The Majority Opinion in this case affirms the judgment of the Court of Special Appeals and treats the sanction of immediate incarceration as "a partial revocation of probation." *See* slip op. at 22. According to the Majority Opinion, a defendant in the Drug Court program may file an application for leave to appeal because the imposition of a partial revocation of probation should be treated the same as complete revocation of

probation. *See id.* In the Majority's view, because partial and complete revocation of probation are equivalent, the circumstances demand the application of due process protections, including written notice, disclosure of the evidence, an opportunity to be heard, and an opportunity to confront and cross-examine adverse witnesses, to proceedings in which the sanction of incarceration is a possible outcome. *See id.* at 25.

I disagree for two reasons. First, the therapeutic nature and purpose of Drug Court proceedings are dependent on the ability of the Drug Court to issue immediate sanctions to the participants for infractions of the program's protocols. Second, in the case before us, Respondents were afforded due process protections, as required under the Maryland Rules.

Drug Court is a diversionary program, a distinct track from the normal flow of criminal cases in the trial courts and is separate from probation. Upon entering the Montgomery County Adult Drug Court program as a condition of probation, a defendant receives an explanation of, and agrees to, the requirements of Drug Court as well as the possible sanctions for non-compliant conduct. Although the completion of probation may require graduation from Drug Court, that program and its requirements are distinct from supervised probation. Non-compliance with Drug Court protocols may result in sanctions, but the imposition of sanctions does not automatically result in *any*, partial or complete, violation of probation. The distinct nature of Drug Court, *i.e.*, the expectation that participants will violate the protocols, militates in favor of treating Drug Court procedures differently than a violation or revocation of probation. Therefore, in my view, defendants are not entitled to *immediately* file for leave to appeal the negative sanctions imposed for non-compliance with the program's protocols. The Court of Special Appeals, as a result,

2

did not have jurisdiction to hear Respondents' cases. Respondents suffered neither a termination from the Drug Court program, nor a violation of probation resulting from the imposition of a negative sanction. These cases lacked the finality necessary for a proper appeal. Lastly, the Maryland Rules outline the appropriate amount of process due to participants in Drug Court, and Respondents received that process as required by our Rules. Today, the Majority Opinion risks diluting the effectiveness of drug court programs in Maryland by removing the threat of the *immediate* sanction of incarceration, a sanction this Court contemplated as a necessary incentive in the rehabilitative process.

### *Ms. Brookman*

Crystal Brookman pleaded guilty to theft in the District Court of Maryland for Montgomery County in August 2012. After she was sentenced in that court, she appealed to the Circuit Court for Montgomery County, where she, again, pleaded guilty to theft. The Circuit Court placed her on probation. In December 2013, Ms. Brookman violated the terms of her probation. As a result, the Circuit Court required Ms. Brookman to complete the Montgomery County Drug Court program as a condition of continuing her probation. In February 2016, Ms. Brookman tested positive for low creatinine,[1] and she received two days' advanced notice of a status conference concerning her test results. At the hearing, the judge recognized that this test was the second time that Ms. Brookman had tested for low creatinine levels. By that time in February 2016, Ms. Brookman had advanced to the third phase of Drug Court, and in this phase, a second such violation was treated as a

---

[1] Low creatinine is an indication that a person subjected to a drug test may be diluting their urine by consuming excess water to skew the result away from a positive drug test.

3

positive test result for drugs. The hearing judge sanctioned Ms. Brookman by regressing her to the second phase of Drug Court, a penalty which would delay her graduation from the program. Additionally, the hearing judge sanctioned her by imposing a requirement of sixty support group meetings in sixty days and a single night of incarceration. In closing remarks, Ms. Brookman's attorney noted her belief that the hearing judge's failure to continue proceedings pending an opportunity for Ms. Brookman to hire an expert to determine if her results fell within a margin of error for the permissible creatinine level violated Ms. Brookman's due process rights. Following the hearing, Ms. Brookman filed an application for leave to appeal.

*Mr. Carnes*

Marvin Randall Carnes pleaded guilty in the Circuit Court for Montgomery County to theft under $10,000 and credit card identity fraud in exchange for completion of Drug Court in April 2014. Mr. Carnes complied with the program until February 2016. Mr. Carnes was required to submit for urinalysis on February 17, 2016 but failed to do so until February 18. Mr. Carnes received a hearing regarding his alleged failure to appear for a urinalysis on the date specified, February 17. At the compliance hearing, Mr. Carnes asserted that the failure of the hearing judge to consider his circumstances, specifically that his test was late and not missed, would result in a violation of his due process rights. Lastly, Mr. Carnes requested to postpone his overnight incarceration, which the hearing judge granted. Thereafter, the hearing judge ordered Mr. Carnes to overnight incarceration and extended his time in the Drug Court program. Following the hearing, Mr. Carnes filed an application for leave to appeal.

4

*The Court of Special Appeals*

The Court of Special Appeals consolidated Ms. Brookman's and Mr. Carnes's appeals and vacated the sanctions imposed in their cases. *Brookman v. State*, 232 Md. App. 489, 158 A.3d 1099 (2017). Relying on *DiMeglio v. State*, 201 Md. App. 287, 305, 29 A.3d 663, 673 (2011), the Court of Special Appeals equated a violation of probation with the imposition of a sanction in Drug Court. *Id.* at 502, 158 A.3d at 1107. As a result, the Court of Special Appeals reasoned that because a defendant has a right to appeal the revocation of probation, a Drug Court participant likewise has a right to appeal a sanction that results in a loss of liberty or extends the period of time in which the defendant must participate in the program. *Brookman*, 232 Md. App. at 502, 158 A.3d at 1107. Therefore, the intermediate appellate court held that Ms. Brookman and Mr. Carnes had the immediate right to appeal their sanctions of incarceration. The Court of Special Appeals also held that the proceedings in which Ms. Brookman and Mr. Carnes received their sanctions failed to comply with Maryland Rule 16-206(e),[2] and as a result both were denied due process. *Id.* at 509, 510, 159 A.3d at 1111, 1112.

---

[2] Maryland Rule 16-207(f) superseded, without substantive alterations, Rule 16-206(e) in 2016. The portion of the Maryland Rules that address problem-solving courts moved from 16-206 to 16-207 after the resolution of Ms. Brookman's and Mr. Carnes' matters in the Circuit Court. Rule 16-206(e) stated the following:

> In accordance with the protocols of the program, the court may, for good cause, impose an immediate sanction on a participant, except that if the participant is considered for the imposition of a sanction involving the loss of liberty or termination from the program, the participant shall be afforded notice, an opportunity to be heard, and the right to be represented by counsel before the court makes its decision. If a hearing is required by this section

(continued . . .)

5

*Problem-Solving Courts*

Problem-solving courts have been validated pursuant to the Maryland Rules. *See* Maryland Rule 16-207. Rule 16-207(a)(1) explains that problem-solving courts "are "specialized court docket[s] or program[s] that address[] matters under a court's jurisdiction through a multi-disciplinary and integrated approach incorporating collaboration by the court with other governmental entities, community organizations, and parties." A prospective participant may only enter a problem-solving court program if the record reflects that he or she "understands the agreement and knowingly and voluntarily enters into the agreement." Rule 16-207(e)(2). Additionally, the prospective participant must execute a written agreement, which indicates "the requirements of the program," the particular "protocols of the program" with regard to permissible judicial conduct, the possible "range of sanctions that may be imposed while the participant is in the program," as well as "any rights waived by the participant." Maryland Rule 16-207(e)(1)(A)–(C).

_____

(. . . continued)
      and the participant is unrepresented by counsel, the court shall comply with Rule 4-215 in a criminal action or Code, Courts Article, § 3-8A-20 in a delinquency action before holding the hearing.

Additionally, the successor Rule, Rule 16-207(f), states:
      If permitted by the program and in accordance with the protocols of the program, the court, for good cause, may impose an immediate sanction on a participant, except that if the participant is considered for the imposition of a sanction involving the loss of liberty or termination from the program, the participant shall be afforded notice, an opportunity to be heard, and the right to be represented by an attorney before the court makes its decision. If a hearing is required by section (f) of this Rule and the participant is not represented by an attorney, the court shall comply with Rule 4-215 in a criminal action or Code, Courts Article, § 3-8A-20 in a delinquency action before holding the hearing.

These Rules seek to guarantee that a problem-solving court program is "transparent and fully disclose[s] to all participants in a precise, detailed manner [the requirements of the program]," thereby making "a written agreement [] necessary." Minutes, Standing Committee on Rules of Practice and Procedure, January 9, 2010 at 46 (hereinafter "Rules Committee Minutes"). Specifically, "as to whether it is clear that one of the outcomes could be incarceration," the Rules Committee considered the necessity that "it is absolutely clear, and it has to be clearly spelled out." Rules Committee Minutes at 48. The Rules contemplate that "the concept of due process [] addresses knowledge and voluntariness of actions," and "if it has not been shown conclusively that [the agreement] meets all of the requirements [of knowledge and voluntariness], then it is subject to attack[.]" Rules Committee Minutes at 51-52. Therefore, the written agreement signed by participants prior to entering a problem-solving court program must include the waiver of any rights, consistent with the law, "including any rights under Rule 4-215 or Code, Courts Article, § 3-8A-20."[3] The Rules Committee recommended Rule 16-206 in January 2010, and we adopted the Rule thereafter.

Rule 16-207(f) calibrates the proper amount of due process balanced against the need for immediate sanctions. As a condition of continued participation in Drug Court, a defendant may receive an immediate sanction as a result of failure to adhere to protocols of the Drug Court program. The Rule contemplates that a loss of liberty, or a period of

---

[3] Both Rule 4-215 and Code, Courts Article, § 3-8A-20 refer to the appropriate procedure to waive the assistance of counsel.

incarceration, may result from a sanction imposed in Drug Court. When drafting this rule, the Rules Committee reflected upon the nature of problem-solving courts:

> The hallmark of problem-solving courts is immediate, swift, appropriate consequences for behavior. This can be positive incentives or negative sanctions. If the report indicates that the participant is using drugs and not attending treatment, the judge will take immediate action. Evidence shows that the immediacy is critical to positive change of behavior. It is no good for the judge to sanction someone weeks later. The literature suggests that immediacy compels the change of behavior.

Rules Committee Minutes at 66. With the possibility of immediate loss of liberty from the negative sanction of incarceration in mind, this Court adopted Rule 16-206(e) and later amended it to become, without substantive differences, Rule 16-207(f), which enumerates the exact amount of process due to participants in problem-solving courts:

> If permitted by the program and in accordance with the protocols of the program, the court, for good cause, may impose an immediate sanction on a participant, except that if the participant is considered for the imposition of a sanction involving the loss of liberty or termination from the program, the participant shall be afforded notice, an opportunity to be heard, and the right to be represented by an attorney before the court makes its decision. If a hearing is required by section (f) of this Rule and the participant is not represented by an attorney, the court shall comply with Rule 4-215 in a criminal action or Code, Courts Article, § 3-8A-20 in a delinquency action before holding the hearing.

Maryland Rule 16-207(f). In other words, if a sanction involves the loss of liberty or termination from the program, Rule 16-207(f) affords participants notice, an opportunity to be heard, and the right to counsel prior to a decision by the problem-solving court.

*No Immediate Appellate Review of a Drug Court Sanction*

The Majority Opinion equates the immediate sanction of incarceration to a "partial revocation of probation." *See* slip op. at 22. By doing so, the Majority Opinion holds that

8

because complete revocations of probation are appealable, partial revocations are also appealable, and therefore when the Drug Court imposes a sanction of incarceration, a Drug Court participant may *immediately* appeal that sanction by filing an application for leave to appeal. *See id.*

I would hold that a participant in a Drug Court program does not have the *immediate* right to file an application for leave to appeal any sanction, whether or not there is a liberty interest in question. The various provisions of the Maryland Rules do not provide for such an immediate appeal, nor is an immediate appeal guaranteed by statute. Granting such a right undermines the purpose and effectiveness of the immediate imposition of sanctions contemplated by Rule 16-207(f).

Drug Courts[4] enter *non-appealable* interlocutory orders, not *appealable* final judgments. Although Ms. Brookman and Mr. Carnes received immediate sanctions of imprisonment, both continued in the Drug Court program uninterrupted. Their sanctions did not result in a discharge from the program, and, therefore, did not lead to a violation of

---

[4] A Drug Court is not a court in the ordinary sense; it is a treatment program with judicial oversight and collaborative involvement of all the parties. *See* Rules Commentary 45 ("The programs started out by being labeled 'drug courts;' however there are no such 'courts' in Maryland. These are programs that operate in the circuit courts and District Court, both in the adult and the juvenile divisions. It is a mistake to call them 'courts.'"); *see Dunson v. Commonwealth*, 57 S.W.3d 847, 850 (Ky. 2001) ("[T]he 'Drug Court' is not a 'court' in the jurisprudence sense; it is a drug treatment program administered by the court system."); *State v. Jakubowski*, 822 A.2d 1193, 1194 (Me. 2003) ("Drug court is not a separate court, but a program within the Superior and District Courts in which heightened judicial attention is given to defendants with substance abuse problems."). When a criminal defendant pleads guilty and accepts probation, and a condition of that probation includes completion of a Drug Court program, defendants are diverted altogether from the judicial system and instead enter into a rehabilitation program.

9

probation or a change to the conditions of probation. *See Russell v. State*, 221 Md. App. 518, 526, 109 A.3d 1249, *cert. granted*, 443 Md. 234, 116 A.3d 474, *appeal dismissed*, 443 Md. 734, 118 A.3d 861 (2015) (holding that a modification to the conditions of probation constitute final judgments and, therefore, are appealable). The Court of Special Appeals determined as much in the case at bar. *Brookman v. State*, 232 Md. App. 489, 501, 503, 158 A.3d 1099, 1107 ("[W]e agree with the State that decisions to impose sanctions for violations of the terms of the Drug Court program are not final judgments in the § 12-203 sense. . . . The Drug Court sanctions imposed in Ms. Brookman's and Mr. Carnes's cases do not modify their individual conditions of probation—the sanctions are elements of the overall program itself[.]"). There was no final judgment in these cases from which an application for leave to appeal would have been proper, because there remained "further action [] to be taken in the case." *See Seward v. State*, 446 Md. 171, 179, 130 A.3d 478, 483 (2016) (explaining that the critical factor in defining a final judgment is "whether 'any further order is to be issued or whether any further action is to be taken in the case.'"). Respondents remained in the Drug Court program, and their probations remained unmodified. In my view, a final judgment would require the probation court to have found Respondents in violation of their probation. That did not happen here. To permit the appeal of each sanction that may arise during the Drug Court program would inundate the Court of Special Appeals with piecemeal appeals from Drug Court programs. Such a policy stands in stark contrast to our general disavowal of piecemeal appeals. *See Smith v. Lead*, 386 Md. 12, 25–26, 871 A.2d 545, 553 (2005) (identifying that the risks involved in

10

piecemeal appeals includes "appellate court[s] do[ing] more to confuse than clarify unresolved issues").

The Majority Opinion ignores the practical problems that piecemeal appeals create. For example, if a participant in Drug Court appeals a sanction of incarceration and, pending the appeal, is terminated from the treatment program, what relief can the Court of Special Appeals grant to the participant? At that point, the issue has become moot. To take this example one step further, what happens if, pending appeal of a sanction of incarceration, a participant is terminated from the program because of multiple infractions, but then the Court of Special Appeals determines that the participant did not commit any one of those infractions? The defendant is no longer participating in the Drug Court program. Does the Court of Special Appeals grant the participant readmission into Drug Court? Or, is the imposition of sanctions for additional infractions stayed pending the appeal?

To determine what happens to the participant while an appeal is pending, we need look no further than the case *sub judice*. Both Ms. Brookman and Mr. Carnes served their sentence of overnight incarceration prior to receiving a decision from the Court of Special Appeals.[5] This timeline illustrates the hollow nature of the solution suggested by the Majority Opinion—the pace with which the Court of Special Appeals rules on applications

---

[5] Because Ms. Brookman and Mr. Carnes had already served their incarceration, the decision of the Court of Special Appeals did nothing to afford any relief to Respondents. Additionally, prior to our review of this case but after the decision of the Court of Special Appeals, Ms. Brookman was terminated from Drug Court and Mr. Carnes completed Drug Court. Therefore, there is no relief that either the Court of Special Appeals or this Court could provide in this case.

11

for leave to appeal offers nothing but a possible pyrrhic victory for participants. *See* slip op. at 18.

An alternate possibility is for the Drug Court to defer enforcement of the sanction until after the Court of Special Appeals has ruled. Of course, this alternative would require the Majority Opinion to institute a uniform policy of immediate appellate review of Drug Court sanctions and require Drug Courts or the Court of Special Appeals to uniformly issue stays of sanctions pending the outcome of appeals. Then, if the Court of Special Appeals affirms the imposition of sanctions, the incarceration occurs months after the infraction, and the sanctions lose any sense of immediacy and, thus, effectiveness. This process functionally deprives Drug Courts of their ability to effectively sanction participants.[6] Moreover, this delayed procedure abandons the wealth of research indicating the importance of the immediacy of sanctions to the overall rehabilitative process of Drug Courts.[7]

An interpretation of Rule 16-207(f) that does not include immediate appellate review is the correct interpretation because it conforms to the purpose underlying Rule 16-

---

[6] The Supreme Court of South Carolina feared the possibility of such judicial intervention into their Drug Court programs. *See State v. Perkins*, 661 S.E.2d 366, 368 (S.C. 2008) (explaining that permitting such review "would transform the Drug Court [p]rograms into a judicially-supervised institution" which would ultimately undermine their rehabilitative potential).

[7] Ms. Brookman's and Mr. Carnes' cases are not Eighth Amendment challenges to the Drug Court sanction of immediate incarceration. Should a majority of this Court object to the menu of sanctions available as part of the Drug Court, there is available a proper procedural vehicle to amend Rule 16-207—through the Rules Committee.

12

207(f).[8]  Drug courts arose in response to the spike in non-violent drug offenders in the criminal justice system, and drug courts have been a resounding success in reducing drug abuse as well as other crimes.  Rossman et al., Urban Institute, *The Multi-Site Adult Drug Court Evaluation: Executive Summary* 5 (2011), https://perma.cc/A7MZ-VKC6.  Those in attendance at the Standing Committee on Rules of Practice and Procedure meeting in January of 2010 discussed the vast literature regarding the utility of drug courts and sought to capture the therapeutic potential of these problem-solving courts.  The Rules Committee determined and recommended to this Court that problem-solving courts needed the capacity to impose immediate sanctions, including the immediate sanction of incarceration as well as termination from the program, to achieve their therapeutic purpose.  The Rules Committee based its recommendation, in part, upon commentary from the Honorable Jamey H. Hueston[9] of the District Court of Maryland for Baltimore City regarding the literature, that the threat of immediate sanction is the "hallmark of problem-solving courts" and that an immediate sanction is "critical to positive change of behavior."  Rules

---

[8] It is not unusual in our system of justice for there to be no immediate right to appeal sanctions imposed by a court.  *See Goodwich v. Nolan*, 343 Md. 130, 141, 680 A.2d 1040, 1045 n.8 (1996) (holding sanctions for discovery violations are, typically, interlocutory); *Yamaner v. Orkin*, 310 Md. 321, 322, 529 A.2d 361, 362 (1987) (recognizing that sanctions for attorney's fees imposed on a party's counsel are interlocutory); *Hurley v. State*, 59 Md. App. 323, 328, 475 A.2d 518, 520 (1984) (holding there is no right to appeal a denial of bail).

[9] The Honorable Jamey H. Hueston served as a member of the Office of Problem-Solving Courts Drug Court Oversight Committee at the time of the 2010 Standing Committee on Rules of Practice and Procedure meeting.

Committee Minutes at 66. "The literature suggests that immediacy compels the change of behavior," and, therefore, delay would dilute a drug court's effectiveness. *Id.*

I disagree that a Drug Court participant is entitled to the *immediate* right of appellate review of sanctions. I do believe that participants may have the right to appellate review *after a probation court adjudicates a violation of probation* based upon a defendant's participation in the Drug Court program. The appellate review is delayed in the sense that any complaint with the Drug Court, procedural or otherwise, may be addressed at a violation of probation hearing. The violation of probation hearing already, by its nature, would provide Drug Court participants an opportunity for review. Only an adjudication of a violation of probation or revocation of probation is final and is, thus, an appealable final judgment. I would hold that only after such an adjudication or revocation of probation can a Drug Court participant seek appellate review of the Drug Court proceedings. If a Drug Court participant ultimately has his or her probation revoked, the participant will receive credit for time served while under the authority of the Drug Court. Maryland Rule 16-207(g). Of course, it may be the case that a Drug Court participant with an objection to a decision by the Drug Court may not receive appellate review of decisions made by the Drug Court if, ultimately, the probation court does not revoke his or her probation. Yet, it is not unusual in our system of justice that a defendant is denied redress for a period of incarceration.[10]

---

[10] Our system of bail exemplifies times when a defendant may face incarceration without redress, immediately or otherwise. If a defendant does not obtain bail and spends time incarcerated pre-trial, only to be found not guilty at a later date, the defendant receives nothing in return for the time he or she spent incarcerated.

14

*Sanctions in Drug Court as Compared to Revocations of Probation*

The Majority Opinion relies on a comparison between revocation of probation, which requires due process protections, and the Drug Court-mandated sanction of incarceration to show that the proceedings at which Ms. Brookman and Mr. Carnes received their sanctions of incarceration violated procedural due process.[11] *See* slip op. at 25. Accordingly, the Majority Opinion contends that because the immediate sanction of incarceration is a partial revocation of probation, the sanction is reviewable under Section 12-302(g) of the Courts and Judicial Proceedings Article of the Maryland Code (1974, 2013 Repl. Vol.) ("Cts. & Jud. Proc. § 12-302(g)"). *See id.* at 22.

I reiterate that the matter before us does not involve termination from Drug Court, or revocation of the participants' probation. Significantly, the Majority Opinion fails to offer any direct support under Maryland law or elsewhere that we should treat an immediate sanction of incarceration as a partial revocation of probation. In contrast, several courts have determined that *termination*, not a *sanction*, from a Drug Court program is no different than complete revocation of probation. Those courts premise their reasoning on the fact that termination from Drug Court results in automatic revocation of probation.

---

[11] However, the paramount concern of both Ms. Brookman and Mr. Carnes during their Drug Court hearings had nothing to do with the incarceration portion of their sanction. The concern articulated in Drug Court was that the sanction would push back their graduation date from Drug Court. If we held Drug Court hearings to the same standards as trials, we likely would not find that an "objection" was made or preserved regarding incarceration. Interestingly, the immediate sanction of incarceration is the crux of the Majority Opinion's concern. In the Majority's view, it is the only sanction, aside from termination from Drug Court, that would warrant an appeal or formal due process protections.

15

*See Hagar v. State*, 990 P.2d 894, 898 (Okla. 1999) (comparing imposition of a deferred sentence and revocation of probation and stating "[t]he consequence of the judicial revocation or termination from Drug Court is to impose the sentence previously negotiated in the plea agreement"); *State v. Rogers*, 170 P.3d 881, 885 (Idaho 2007) (holding that "Rogers pleaded guilty in order to participate in [the Ada County Drug Court Program ("ACDCP")] and his termination from ACDCP resulted in his being criminally sentenced and having a felony conviction appear on his record"); *Hopper v. State*, 546 N.E.2d 106, 108–09 (Ind. 1989) ("Because a defendant may suffer the loss of his [or her] liberty by having judgment entered and by being subsequently sentenced upon termination of treatment . . . .  we hold that an individual placed under drug treatment supervision has a protected liberty interest.").

The records in both cases demonstrate the false equivalence between revocation of probation, complete or partial, and a Drug Court sanction of incarceration.  The Drug Court hearings at which Ms. Brookman and Mr. Carnes were sanctioned were not violation of probation hearings.  Moreover, Drug Courts *anticipate* that participants will fail, or relapse, in their recovery.  For that reason, the therapeutic setting of Drug Court abandons particular aspects of the criminal justice system in an effort to provide long-term recovery prospects. *See* Gail Sasnett-Stauffer & E. John Gregory, *A Drug by Any Other Name Is Still a Drug: Why the Florida Judiciary Should Start Treating DUI as Any Other Drug Offense*, 13 U. Fla. J. L. & Pub. Pol'y 299, 325 (2002) ("Relapse is treated as part of the normal process of recovery [in Drug Court programs].").

The Majority Opinion cites to *Brown v. State*, 409 Md. 1, 971 A.2d 932 (2009), to demonstrate that this Court has already agreed with the proposition that a Drug Court participant may appeal a sanction of immediate incarceration. *See* slip op. at 23. The Majority Opinion correctly observes that the *Brown* Court stated, "If the procedures established by the Baltimore City Adult Felony Drug Treatment Court erroneously violate the rights of a defendant, there are well-developed mechanisms for correcting any violation." 409 Md. at 9, 971 A.2d at 936. One should not infer from this sentence in *Brown*, however, that application for leave to appeal is one of the well-developed mechanisms referenced.[12] I would conclude that the Court of Special Appeals has

---

[12] The discussion in *Brown* of well-developed mechanisms includes a citation to *Parker v. State*, 337 Md. 271, 653 A.2d 436 (1995). In *Brown*, 409 Md. at 5, 971 A.2d at 934, this Court held that the Baltimore City Adult Felony Drug Treatment Court had fundamental jurisdiction to try individuals charged with violations of the Maryland Controlled Dangerous Substances Act. In *Brown*, *id.* at 9, 971 A.2d at 936, in *dicta*, this Court stated: "If the procedures established by the Baltimore City Adult Felony Drug Treatment Court erroneously violate the rights of a defendant, there are well-developed mechanisms for correcting any violations." (Footnote omitted). In a footnote immediately following that statement, the Court referenced two cases—*Scott v. State*, 289 Md. 647, 426 A.2d 923 (1981), and *Caldwell v. State*, 51 Md. App. 703, 445 A.2d 1069, *cert.* denied, 294 Md. 141 (1982)—that did not concern the Drug Court and, indeed, predated the establishment of drug courts in Maryland. *Brown*, 409 Md. at 9, 971 A.2d 936 n.1. The statement in *Brown* with respect to "well-developed mechanisms" for correcting violations was not this Court's holding, rather, it was an expression of *dicta* that referenced two cases that did not involve Drug Court at all. It cannot be said that *Brown* stands for the proposition that this Court has already determined appellate review is available where sentences of incarceration are imposed by Drug Court.

It is accurate that, in *Brown*, *id.* at 8, 971 A.2d at 936, we quoted *Parker*, 337 Md. at 287, 653 A.2d at 443–44, as follows:

> Moreover, well-developed, institutionalized mechanisms exist within the judicial system for correcting erroneous decisions made by judges. Most alleged errors can be challenged through the established appellate process. In addition, extraordinary writs may be available in unusual circumstances.

17

jurisdiction to entertain an application for leave to appeal only after there has been a determination of violation of probation. *See* Ct. & Jud. Proc. § 12-302(g) (conferring the right to file an application for leave to appeal from an order of a Circuit Court revoking probation); *Kupfer v. State*, 287 Md. 540, 543, 414 A.2d 907, 908 (1980) (holding that appellate courts have jurisdiction to review a modification of probation stemming from a finding of a violation of probation conditions); *see also State v. Perkins*, 661 S.E.2d 366, 368 (S.C. 2008) ("In our view, it would be improper for the judiciary to interject itself into such matters which are wholly internal and specific to each Program and to each participant."). Additionally, *Brown* is factually distinct from the case at bar because *Brown* involved a violation of probation hearing. Finally, we adopted Maryland Rule 16-206 a year after we decided *Brown*. Therefore, *Brown* provides to us no guidance in interpreting the Rule.

*The Drug Court Complied with the Mandates of Due Process in Rule 16-207(f)*

The Majority Opinion contends that due process constraints are necessary for Drug Courts to observe the rights of participants. *See* slip op. at 25. The basis for this observation is that the liberty interest at stake requires formal, adversarial proceedings. *See id.* The Majority Opinion cites to *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), and *Morrisey v. Brewer*, 408 U.S. 471 (1972). *See id.* Neither of these opinions addressed procedural due process in the context of drug courts; the cases related to probation and parole

---

This quote supports the Court's discussion in distinguishing between acts taken in excess of jurisdiction and those for which there was an absence of jurisdiction. The quote does not reference an ability to appeal a decision of the Drug Court.

revocation proceedings. We have already calibrated such due process protections into the Rules. *See* Rule 16-207(f). Rule 16-207(f) indicates the following is necessary for procedural due process: "the participant shall be afforded notice, an opportunity to be heard, and the right to be represented by counsel before the court makes its decision."

Part II.B of the Majority Opinion constitutes an attack on Rule 16-207(f) as inadequate in its provision of procedural due process protections. *See* slip op. at 24–29. Due process, per Rule 16-207(f), was afforded to Ms. Brookman and Mr. Carnes. The essence of the violation of due process owed to Ms. Brookman, according to the Majority, is that Ms. Brookman did not receive a continuance so that she could produce an expert to attack the laboratory test results. Ms. Brookman was represented by counsel at a hearing for which she received notice. Ms. Brookman's counsel did not proffer that the expert had tested the results or that the expert could report testing inaccuracies if a continuance was granted. Ms. Brookman failed to produce, in court on the day of her hearing, an expert witness. Ms. Brookman's alleged violation of due process amounts to a claim of insufficient notice, yet at no point did Ms. Brookman demonstrate that she was denied notice. The hearing judge listened to the arguments and was unpersuaded.[13] The authority

---

[13] According to page 33 of the National Association of Drug Court Professionals 2013 volume entitled Adult Drug Court Best Practice Standards ("Best Practice Standards"), "Given that many controversies in Drug Courts involve uncomplicated questions of fact, such as whether a drug test was positive or whether the participant missed a treatment session, truncated hearings can often be held on the same day and provide adequate procedural due process protections." The Drug Court in the Respondents' cases did not deviate from what is considered the best practice for Drug Courts.

to grant a continuance is within the discretion of the presiding judge, and based on the record, I cannot conclude that he abused his discretion.

Mr. Carnes alleges that his mitigating circumstances, involving a broken-down vehicle that prevented him from getting a urinalysis test on February 17, were not considered, and the Majority Opinion deems this omission a violation of procedural due process. The menu of sanctions proposed in the Drug Court Policies and Procedures Manual are not discretionary but rather are "mandatory sanction[s] to be imposed for non-compliance" with the protocols of the program. The program participants know well in advance what to expect if they violate the protocols of the program. In other words, the Drug Court Handbook, which participants have agreed they have read, indicates that "[f]ailure to comply with the program rules *will* lead to 'sanctions' or punishments." (Emphasis added). Mr. Carnes received his opportunity to be heard and, again, the Drug Court judge did not accept Mr. Carnes' reasons as justification for violating the protocols of the treatment program.

*The Majority Opinion's Use of the Hoffman Case*

The Majority Opinion offers its worst-case scenario in discussing the case *Hoffman v. Knoebel*, No. 17-2750, 2018 WL 3233546 (7th Cir. July 3, 2018). *See* slip op. at 29–32. The preface to the *Hoffman* discussion accuses the Dissenting Opinion of "discount[ing] the requirements of due process and appellate rights" for drug court programs. *See id.* at 29. At no point do I do this, and, in fact, I emphasize that Rule 16-207(f) provides due process for Drug Court participants and that the Drug Court, in the case at bar, complied with the mandates of the Rule. The Majority Opinion speculates that a Maryland Drug

20

Court judge may interpret the menu of sanctions to mean that the judge has authority to impose a jail sanction for an indefinite period. *See id.* at 29–30. According to the Majority Opinion, the Dissenting Opinion would not preclude such a sanction. The Majority Opinion fails, however, to explain why granting an application for leave to appeal would preclude the imposition of an indefinite period of incarceration. *See id.* at 30 Moreover, the Majority Opinion lacks any empirical data to show the frequency at which Drug Court participants receive an overnight jail sanction, a weekend jail sanction, or any sanction of incarceration greater than the length of time specified in the menu of sanctions.[14] Without further study of the issue, which would necessarily require an evaluation of data unavailable to us now, this Court has no way to gauge the validity of the Majority Opinion's assertion.

The Majority Opinion next points to the *Hoffman* case to describe the fruition of its worst-case scenario. *See id.* Although the case is troubling, it is unhelpful at resolving the issue before us. In the instant case, the Maryland Rules provide procedural due process for participants in Drug Court programs and those Rules were followed by the Drug Court. In the *Hoffman* case "[t]he problem was that the hearing itself was constitutionally deficient." *See Hoffman*, 2018 WL 3233546 at 3. The Drug Court participants in *Hoffman* never were

---

[14] The Drug Court literature suggests that "[t]he certainty and immediacy of sanctions are far more influential to outcomes than the magnitude or severity," and "[r]esearch in Drug Courts indicates that jail sanctions produce diminishing returns after approximately three to five days." Best Practice Standards at 32–33. It would appear that no Drug Court judge, in reality, should ever consider imposing the sanctions the Majority Opinion fears if the judge is acting in compliance with constitutional expectations and the Code of Judicial Conduct.

21

told that they had the right to an attorney, never received notice before their hearings, never received the evidence against them demonstrating a violation of Drug Court protocols, and they were held in jail indefinitely.[15]  *See id.*  There is no suggestion that such egregious behavior occurred in this case or is occurring in any Drug Courts in Maryland.  The Majority sidesteps what occurred in the present case and, instead, speculates at what will arise in the worst case without providing a basis to believe it is likely to happen.

The Majority Opinion draws "the lesson from the Indiana experience [] that the promise of due process protections in a rule or statute may be of little comfort without the availability of an appellate[16] process to review whether that promise is kept."  *See* slip op. at 32.  In *Hoffman*, former participants in a drug court program filed a 42 U.S.C. § 1983 action against a county sheriff, probation officer, case manager, and courtroom bailiff. *Hoffman*, 2018 WL 3233546 at 4.  The former participants alleged that they received extended periods of incarceration in violation of due process.  *Id.*  Notably, the *Hoffman*

---

[15] The "wholly indefensible system" articulated by the United States District Court for the Southern District of Indiana was how "the duration of detention of Program participants were random inconsistent, happenstance, arbitrary, capricious, negligent and unjust." *Hoffman v. Knoebel*, No. 4:14-CV-00012-SEB-TAB, 2017 WL 3191198 at 4 (S.D. Ind. July 27, 2017) (order granting summary judgment).

[16] The Majority Opinion believes, consistent with the beliefs of this member of the Court, that the Drug Court "will [not] ignore guidance from the appellate courts on the requirements of due process, even if it is too late to apply in a particular case." *See* slip op. at 32 n.25.  The rationale raises the question: how often does the Court of Special Appeals grant appeals in cases where no relief can be granted?  If a Drug Court participant has already been released from jail, or has graduated or been terminated from the program, the Majority Opinion has no explanation of what meaningful guidance the intermediate appellate court would, or could, provide to the Drug Court, or why the Court of Special Appeals would hear the case at all.

Court never suggested that appellate review would have prevented the abuses that occurred in the Indiana Drug Court. What *Hoffman* teaches us is that the team-based approach in Drug Court provides a layer of accountability on Drug Court judges. *See Hoffman v. Knoebel*, No. 4:14-CV-00012-SEB-TAB, 2017 WL 3191198 at 4 (S.D. Ind. July 27, 2017) (order granting summary judgment) (explaining that various stakeholders in the Drug Court addressed concerns with the Circuit Court which prompted an investigation into the Clark County Drug Treatment Court Program that resulted in removing the head of the Drug Court and the eventual termination of the entire program).

In Maryland, our Drug Court programs provide internal procedures and safeguards which have been approved by the Chief Judge of the Court of Appeals, this Court, the Judicial Council, the County Administrative Judge of a circuit court, the District Administrative Judge of the District Court or any official whose participation in the drug court will be required. *See* Rule 16-207(c)–(d). Frankly, nothing prevents a Drug Court participant from lodging a complaint about a sanction with the Drug Court judge, the treatment providers, the attorneys involved, the probation judge, as well as the District Administrative Judge of the District Court or County Administrative Judge of a circuit court. Anyone else affiliated with the Drug Court program may raise these concerns as well. Such complaints may result in an investigation of the Drug Court, possibly by an administrative judge or the probation judge, leading to the possible replacement of a Drug Court judge or other result. It is important to note that the probation judge has a major stake in the success or failure of the Drug Court participant and therefore would be most interested in being made aware of any alleged injustices with the handling of participants

23

within the program. This is so because the probation judge is partly responsible for the Drug Court participant's placement in the program.

I take no issue with the notion that Drug Courts must be accountable, but I fail to see how creating a right to file an application for leave to appeal creates any accountability whatsoever. Multiple levels of accountability and review already exist in the Drug Court context without the addition of immediate appellate review. If the Majority of this Court takes issue with the sanction of incarceration and the way that sanction is deployed in a Drug Court program menu of sanctions which we have previously approved, then there is a better approach than re-writing our Rules of Procedure in the vacuum of this case. Accordingly, I would implore the Rules Committee to study the issue of the necessity and timing of appellate review in the area of Drug Court programs. In that process, the Rules Committee can review the vast literature regarding, particularly, Drug Courts and with the benefit of a robust debate, recommend to us how, and if, we should revise the Rules.

*Conclusion*

I would hold that no procedural due process violations occurred in either Ms. Brookman's or Mr. Carnes' cases. Further, due process does not necessitate *immediate* appellate review of decisions made by Drug Court judges for imposing negative sanctions for violations of Drug Court protocols that do not result in violations or revocations of probation. Accordingly, I would reverse the judgment of the Court of Special Appeals and dismiss the appeal. Judges Adkins and Watts have authorized me to state that they join in this Dissenting Opinion.

24